IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINDA LANDAN**, **HOLLY AND LINDSEY,** )<br>**LLC**, **JEFFREY J. KIKIRICA**, Trustee for )<br>B.L. MCCANDLESS, LP., **B.L. MCCANDLESS,** )<br>**LP**, **BROAD LAND PA, LLC**, **BLAZIER** )<br>**DRIVE, LLC,** )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**WAL-MART REAL ESTATE BUSINESS** )<br>**TRUST**, **WAL-MART STORES EAST, LP**, )<br>**WAL-MART STORES, INC.**, **S. ROBSON** )<br>**WALTON**, President, **BRIAN CORNELL**, )<br>President Wal-Mart Real Estate, **MICHAEL T.** )<br>**DUKE**, EVP**, CHARLES M. HOLLEY, JR.,** )<br>CFO, Walmart Realty**,** )<br>)<br>Defendants. ) | 2:12cv926<br>**Electronic Filing** |

**OPINION**

Plaintiff commenced this action seeking damages arising from a land development agreement that contemplated the construction of a "225 prototype" Wal-Mart supercenter. The parties dispute the degree to which they were bound to complete their mutual undertaking. Presently before the court is defendants' motion to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially

the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

Pursuant to these principles the complaint sets forth the background below. On March 3, 2005, plaintiff B.L. McCandless, L.P. ("B.L. McCandless"), purchased real property at 555 Blazier Drive ("parcel one") at a bankruptcy sale. Amended Complaint at ¶ 15. Defendant Wal-Mart Real Estate Business Trust ("Wal-Mart Real Estate") made an unsuccessful bid to purchase parcel one at the sale. Id. at ¶ 16. After failing to acquire parcel one, Wal-Mart Real Estate made an offer to Linda Landan, the managing member of B.L. McCandless, to purchase the site. Id. at ¶¶ 17-18. Landan refused this offer, but indicated she was willing to negotiate a lease. Id. at ¶ 18.

Landan received an offer from Wal-Mart Real Estate to lease the site. Id. at ¶ 19. Wal-Mart Real Estate indicated it was interested in pursuing a 225 prototype supercenter and

therefore additional land would be needed. Id. B.L. McCandless and Wal-Mart Real Estate began negotiations concerning the contemplated transaction. Id. at ¶¶ 19-20.

In March of 2006, Wal-Mart Stores, Inc. ("Wal-Mart"), through Mary Rottler, and B.L. McCandless, through Landan, reached an oral agreement that the parties would enter into a ground lease. Id. at ¶ 22.

On April 5, 2006, B.L. McCandless and Wal-Mart executed a letter of intent. Id. at ¶ 23. This agreement indicated that B.L. McCandless would purchase two additional pieces of property adjacent to parcel one. Id. at ¶ 24. Additionally, the letter contemplated that B.L. McCandless would terminate existing lease agreements it had with Harry Products and Brewery Outlets at parcel one. Id. The letter provided that it was non-binding, that neither party had any obligation to the other, and any actions or costs were to be incurred at each party's own expense. See April 5, 2006, Letter of Intent (Doc. No. 23-1) at 5.

In accordance with the letter of intent, B.L. McCandless acquired 551 Blazier Drive ("parcel two") for the sole benefit of defendants. Amended Complaint at ¶¶ 24, 47. This property was not for sale, but Landan convinced the owner to sell the property for $750,000.00 above its appraised value. Id. at ¶ 24.

Again relying on the letter of intent and ongoing representations and assurances that Wal-Mart intended to enter into the ground lease, B.L. McCandless purchased the third parcel ("parcel three") for $1,000,000.00. Id. at ¶ 25. The price for parcel three also was $750,000.00 above appraised value and included $350,000.00 in options, legal fees and contract deposits. Id. Landan and Holly and Lindsay, L.L.C. ("Holly and Lindsay"), had to assist B.L. McCandless in in borrowing the $750,000.00, and Landan was required to mortgage her home.[1] Id.

---

[1] Landan is the managing member of Holly and Lindsay. Id. at ¶ 2.

Wal-Mart and B.L. McCandless engaged in lengthy negotiations aimed at producing a proposed ground lease. Id. at ¶ 26. Landan and B.L. McCandless incurred thousands of dollars in legal fees during this process. Id. Landan and Wal-Mart spent additional money on engineering studies and building layouts based on Wal-Mart's repeated demands, assurances, and promises to sign the final ground lease. Id. at ¶ 27. As a final condition to signing the lease, Wal-Mart required B.L. McCandless to terminate lease agreements it had with Bally's Fitness at parcel two, which it did. Id. ¶¶ 28-29.

In July 2007, a final ground lease was prepared. Id. ¶ 30. The lease was to be executed by Wal-Mart and Blazier Drive, L.L.C. ("Blazier Drive").[2] Id. at ¶¶ 29-30.

Throughout the process Rottler indicated on numerous occasions that the ground lease would be signed by Wal-Mart. Id. at ¶ 31. Rottler reassured plaintiffs of this even after Landan indicated that she was having trouble securing all the needed financing and difficulty paying for the option money for parcel three. Id. at ¶ 32. Additionally, "Eric Zorn and Brian Hooper of Wal-Mart Stores[, Inc.,] also promised that all terms [of the ground lease] were agreed to and that [it] would be executed." Id. at ¶ 33.

On January 8, 2009, Wal-Mart dropped the development project without advising plaintiffs that it was no longer interested in the transaction. Id. at ¶ 36. On March 23, 2009, Rottler, on behalf of Wal-Mart, offered to purchase parcels one, two and three. Id. at ¶ 37; see Land Purchase Offer of March 23, 2009 (Doc. No. 23-1 at 76-78).

On August, 8, 2009, B.L. McCandless filed for Chapter 11 Bankruptcy due to the demands within the letter of intent, defendants' failure to close on the transaction, and plaintiffs' lenders' refusal to extend or refinance the loans on the properties. Id. at ¶ 45. Plaintiff Jeffrey J.

---

[2] Landan is the managing member of Blazier Drive. Id. at ¶ 6.

5

Sikirica was appointed as trustee of the estate of B.L. McCandless, and is empowered to pursue claims on its behalf. Id. at ¶¶ 3, 45.

Landan, as the managing member of B.L. McCandless and as an individual, negotiated the purchase agreements for parcels two and three. Id. at ¶ 47. Parcel one was purchased for $2,150,000.00, parcel two was purchased for $3,150,000.00, and parcel three for $1,000,000.00. Id. at ¶¶ 48-50. On October 25, 2011, parcels one and two were sold in a bankruptcy sale for $4,000,000.00. Id. at ¶ 46; see December 15, 2011, Report of Sale (Doc. No. 23-1 at 79-80).

Plaintiffs assert that all actions after March 3, 2005, were induced by the repeated assurances, demands, promises, and representations of defendants. Id. at ¶ 53. Plaintiffs' reasonable reliance on these assurances resulted in (1) great financial loss, (2) loss of potential business opportunities, and (3) B.L. McCandless filing for bankruptcy and losing its ownership of the properties. Id. at ¶ 54. Despite plaintiffs' repeated demands defendants refused to execute the ground lease or pay plaintiffs' extensive out-of-pocket expenses. Id. at ¶¶ 56-57.

Defendants move to dismiss on the grounds that any asserted oral agreement identified by plaintiff is unenforceable under Pennsylvania law, and because the only document signed by both parties was a non-binding letter of intent, an enforceable contract never existed. And without an enforceable contract, the duty of good faith and fair dealing could not have arisen. Additionally, because of the non-binding nature of the letter of intent, plaintiffs could not reasonably rely on any alleged assurances or promises, which in turn purportedly bars plaintiffs' claims for promissory estoppel and fraud. Finally, defendants argue that numerous claims are asserted by individuals and entities who were not parties to any of the underlying transactions, and plaintiffs have advanced claims against Wal-Mart entities and executives who were not parties to those transactions or participants in any of the negotiations, and all such claims should be dismissed.

Plaintiffs maintain that although the oral agreement and letter of intent may not have been enforceable contracts in and of themselves, the parties had reached an enforceable agreement by the time the final draft of the ground lease was prepared. As a result, the covenant of good faith and fair dealing governed the parties' interactions. Furthermore, plaintiffs contend that their amended complaint sufficiently has pled claims for promissory estoppel and fraud, and defendants were well aware that all of the plaintiffs were involved in some or all of the undertakings connected to the underlying transactions and agreements.

Plaintiffs' allegations pertaining to the ground lease and defendants' asserted intent to execute it are sufficient to state a claim for breach of contract that is plausible on its face. It is well settled in Pennsylvania that where the parties have agreed on the essential terms and the only remaining act to be done is the formalization of the agreement, the latter will not prevent the contract from being enforceable. Field v. Golden Triangle Broadcasting, Inc., 305 A.2d 689, 693 (Pa. 1973); Melo-Sonics Corporation v. Cropp, 342 F.2d 856, 859-860 (3d Cir. 1965). In this regard, Section 26 of the Restatement of Contracts permits parties to bind themselves contractually even if they intend to draft a formal document at a later date. Field, at 693; Goldman v. McShain, 247 A.2d 455, 459 (Pa. 1968). In other words, "[i]f the parties agree to all material terms and only have a formalization remaining, a binding contract is formed; the focus is on the mutual agreement and an intent to be bound by the agreement." Falls v. State Farm Ins. Mut. Auto. Ins. Co., 774 F.Supp.2d 705, 710-11 (M.D.Pa. 2011). As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." Krizovensky v. Krizovensky, 624 A.2d 638, 642 (Pa. 1993).

Here, there were numerous conversations between Landan and Wal-Mart's agents wherein Landan was assured of Wal-Mart's intent to enter into the contemplated lease.

Thereafter significant negotiations culminated in assurances to Landan that the ground lease was acceptable and would be signed by Wal-Mart within 30 days.

Defendants' contentions that – (1) the handwritten edits on the ground lease provide only evidence of ongoing negotiations and (2) the parties did not intend for it to be the final version – compel a contrary determination as a matter of law are wide of the mark. The parties' intentions generally are for the trier of fact to determine and therefore these matters must be decided at a later time. Meo-Sonic Corp. v. Cropp, 342 F.2d 856, 859 (3d Cir. 1965). Given the averments as recounted above, the finder of fact could conclude that the parties had reached an agreement as to all material terms and only a formal execution of the writing containing those terms remained. Thus, a plausible claim for breach of contract exists.

Defendants' contention that the non-binding clause in the letter of intent precludes the formation of an enforceable agreement is misplaced for similar reasons. Defendants neglect to recognize that the letter also states that its "provisions are subject to withdrawal and modification by either party at any time for any reason." April 5, 2006, Letter of Intent (Doc. No. 23-1) at 5. The parties thus were free to agree to modify their agreement and reach a final, enforceable agreement prior to signing a writing embodying the same, and the factual allegations in the complaint create a plausible basis to support that they did just that.

Furthermore, the array of cases cited by defendant wherein letters of intent with similar non-binding language were held to preclude the formation of enforceable contracts are distinguishable. In those cases the parties essentially had letters of intent with little or no additional negotiations or undertakings. Here, the parties not only had the letter of intent, but they progressed through two additional real estate purchases, terminated existing leases, and engaged in extensive negotiations to create the final ground lease. Although this document was never signed and the last version of it has some facial edits, it is plausible that the parties

mutually agreed that the ground lease had been finalized and thus reflected a modification to the non-binding clause in the letter of intent. As mentioned above, such modifications were permitted according to the signed letter of intent.

At this procedural posture, all well-pleaded allegations in the complaint must be accepted as true and viewed in the light most favorable to plaintiff. The pertinent inquiry is whether the parties "manifested an intention to be bound by" an agreement. ATACS Corp. v. Trans World Communications, 155 F.3d, 659 665 (3d. Cir. 1998). Plaintiffs are entitled to discovery in an attempt to prove that an agreement was reached and the parties intended it to be binding. Although questions of enforceability remain, the possibility that both parties agreed to be bound by the ground lease cannot be foreclosed at this juncture. Therefore, defendants' motion to dismiss plaintiffs' breach of contract claim must be denied.

Plaintiffs' claim for promissory estoppel fails as a matter of law. Under appropriate circumstances this doctrine can be used to make an otherwise unenforceable agreement binding. Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). The doctrine requires the plaintiff to show that the defendant made a promise that he should have reasonably expected to induce the plaintiff to act or refrain from acting; that the plaintiff actually relied on the promise and either took or refrained from taking action; and that enforcing the promise is the only way to avoid injustice. Id.

Importantly, the promise by the defendant upon which the plaintiff relies must be a promise to do something in the future. See Commonwealth, Dep't of Pub. Welfare v. Sch. Dist. of Phila., 410 A.2d 1311, 1314 (Pa. Commw. 1980) (citing Langer v. Superior Steel Corp., 161 A. 571 (Pa. Super. 1932)). Further, whether a party acted reasonably in response to a promise is an issue of fact reserved for the jury. See Dilworth v. Metro. Life Ins. Co., 418 F.3d 345, 354 (3d Cir. 2005) (quoting Tran v. Metropolitan Life Insurance Company, 408 F.3d 130, 139 (3d

Cir. 2005)) ("the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury.").

"Promissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." Iversen Baking Co., Inc. v. Weston Foods, Ltd., 874 F. Supp. 96, 102 (E.D. Pa. 1995). Breach of contract and promissory estoppel claims may be pleaded in the alternative; nevertheless, if an enforceable contract exists, the promissory estoppel claim must fail. Id. (citing Carlson v. Arnot–Ogden Mem. Hosp., 918 F.2d 411, 416 (3d Cir.1990); Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1043 (E.D.Pa.1994); United States v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D.Pa.1991) (unjust enrichment).

Here, because a plausible claim for breach of contract has been stated, pursuing a promissory estoppel claim is inappropriate. Accordingly, Count II for promissory estoppel will be dismissed without prejudice to its reinstatement in the event further proceedings lead to a showing that a claim for promissory estoppel is the only way to avoid injustice.

Plaintiffs' attempt to maintain an independent cause of action for breach of the covenant of good faith and fair dealing is misplaced. The covenant is presumed to exist in every contract governed by Pennsylvania law. Donahue v. Federal Express Corp., 753 A.2d 238, 242 (Pa. Super. 2000). Nevertheless, the covenant operates only "as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action" and "cannot be used to override an express contractual term." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91-92 (3d Cir. 2000) (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 617-18 (3d Cir. 1995) and USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 438 (3d Cir. 1993)). Thus, an implied duty of good faith claim cannot stand "where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'" Id. at 92

(quoting Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701-02 (3d Cir. 1993)). It likewise cannot be used where the parties' dispute is premised on expressed obligations they chose to address in their agreement. Id. at 93; accord LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391-92 (Pa. Super. 2008) (Pennsylvania does not recognize an action for breach of the covenant of good faith and fair dealing that is independent of a breach of contract claim.).

Here, plaintiffs' contentions concerning the duty of good faith relate to matters subsumed within their contract claim for breach of the ground lease. Because plaintiffs have set forth a claim for breach of contract, an independent cause of action for breach of the duty of good faith and fair dealing cannot be maintained.

Notwithstanding the above, plaintiffs' allegations in the breach of good faith claim augment those advanced in the breach of contract claim. Therefore, to the extent the breach of good faith claim contains allegations conceptually distinct from those in Count I, they will be treated as being a part of that count.

Plaintiffs' attempt to maintain a fraud claim is unavailing. As previously noted, allegations of a complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Iqbal, – U.S. –, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleadings that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.

Here, plaintiffs merely offer the "formulaic recitation of the elements" of fraud that Twombly clearly forbids. Plaintiffs aver defendants are liable only because they meet each

11

element of fraud and fail to offer further explanation. See Amended Complaint ¶¶ 32-35.[3] In response, plaintiffs assert that each of the elements have been met but do not offer any factual basis for their conclusion. Under these circumstances plaintiffs' claim for fraud falls short.

Moreover, plaintiffs' ability to proceed on a breach of contract claim forecloses their ability to pursue a remedy in tort. Pennsylvania's gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." Id.

In general, the difference between contract claims and tort claims depends upon the origin of the duties alleged to have been breached by the defendant's conduct. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992)).

The two types of causes of action are not mutually distinct. Id. Instead, it is "possible that breach of contract also gives rise to an actionable tort." Id. But "to be construed as in tort, however, the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral." Id. (quoting Bash, 601 A.2d at 829 (Pa. Super. 1992)). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Id. (quoting

---

[3] Under Pennsylvania law, a cause of action for fraud requires proof of the following elements: a misrepresentation; a fraudulent utterance thereof; an intention by the maker that the recipient will act; justifiable reliance by the recipient upon the misrepresentation; and damages to the recipient as the proximate result. Neuman v. Corn Exchange National Bank & Trust, 51 A.2d 759 (Pa. 1947).

Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002)).

Whether the gist of the action doctrine applies to bar a claim is a question of law. Id. A number of courts have observed:

> The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.
>
> "Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action." Black's Law Dictionary 689 (6th ed. 1990). "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law . . . The "gist of the action" test, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit.

eToll, 811 A.2d at 15 (quoting American Guar. And Lia. Ins. Co., v. Fojanini, 90 F.Supp.2d 615, 622-23 (E.D. Pa. 2000)).

Courts have applied the gist of the action doctrine to bar tort claims in four separate settings: (1) where the claims arise from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where a tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of a contract. Id. at 20.

Here, plaintiffs' fraud claim rests on statements and promises made by defendants regarding the ground lease. As stated above, it is plausible that an enforceable contract existed between the parties. Any duties defendants breached were created and grounded in that contract. The alleged harm and liability arises from defendants' failure to perform the obligations in the ground lease. Thus, proceeding in tort merely would duplicate the breach of contract claim. Accordingly, plaintiff's claim for fraud will be dismissed.

Plaintiffs' attempt to maintain claims against Wal-Mart Real Estate likewise is unavailing. Plaintiffs' amended complaint does make certain allegations against Wal-Mart Real

Estate, namely that it attempted to purchase property in bankruptcy and later from plaintiffs, and that Rottler worked for Wal-Mart Real Estate when she conducted negotiations with Landan in an effort to bring about a ground lease between Wal-Mart and B.L. McCandless. Without more, these factual allegations fail to set forth a claim that is plausible on its face. Accordingly, all claims against Wal-Mart Real Estate will be dismissed.

Plaintiffs also named S. Robson Walton, Brian Cornell, Michael T. Duke, and Charles M. Holley, Jr., as defendants because they are high-level executives of various Wal-Mart entities. Plaintiffs claim that as high ranking officials these individuals are responsible for the conduct of their employees. This argument fails as a matter of law.

In Pennsylvania, the general rule is that one who deals with a corporation, knowing it to be such, cannot enforce individual liability against the officers or agents who act for the corporation. Bala Corporation v. McGlinn, 144 A. 823, 824 (Pa. 1929). The fact that an individual acts as an officer of a corporation and is given general supervision over the company does not in itself make him or her liable for the misconduct of other corporate employees. Chester-Cambridge Bank & Trust Co., et al. v. Rhodes, et al., 31 A.2d 128, 131 (Pa. 1943).

Under Pennsylvania law, a corporate officer who negotiates a contract on behalf of a corporation cannot ordinarily be held liable for the contract. Bala at 824. Furthermore, an individual cannot be liable for breach of contract unless he or she is a party to that contract. See Electron Energy Corp. v. Short, 597 A.2d 175, 178 (Pa. Super. 1991) (holding that corporate president could not be liable for breach of contract where he is not a party to the contract); Fleetway Leasing Co. v. Wright, 697 A.2d 1000, 1003 (Pa. Super. 1997) ("a person who is not a party to a contract cannot be held liable for breach by one of the parties to a contract").

Here, none of the individual defendants were parties to any of the transactions, nor were they involved with any of the underlying negotiations. Under these principles, Walton, Cornell, Duke, and Holley are entitled to be dismissed.

Plaintiffs fail to plead facts to support their position that Linda Landan, Holly and Lindsay, and Broad Land PA, LLC ("Broad Land PA") are proper plaintiffs in the claim that has survived defendants' motion to dismiss. Pennsylvania law has long held that privity is a perquisite for bringing a breach of contract claim. See e.g., Evans v. Otis Elevator Co., 168 A.2d 573, 575 (Pa. 1961).[4] A contractual relationship must exist between parties for them to be considered in privity. Phillips v. Cricket Lighters, 841 A.2d 1000, 1006 (Pa. 2003).

The only parties to the letter of intent are Wal-Mart and BL McCandless. Both of these entities are named parties and each executed the agreement. The named parties to the alleged ground lease are Wal-Mart Stores East, LP, ("Wal-Mart Stores East") and Blazier Drive. Although Landan's name does appear on each of these documents, she is listed in her capacity as a manager of the plaintiff companies. See April 5, 2006, Letter of Intent (Doc. No. 23-1) at 5; see also Ground Lease (Doc. No. 23-1) at 44.

The factual allegations of the complaint will only support the proposition that Landan was acting in her capacity as a managing member of both BL McCandless and Blazier Drive when negotiating with defendants. Landan also was the managing member of Holly and Lindsay, and Broad Land PA when they provided financing to parcels two and three. Although she stood to benefit from these dealings, any such benefit would have been an indirect result of the successful negotiations between defendants and the companies Landan managed. Landan now seeks to highlight her personal losses arising from the failed negotiations. But Landan's

---

[4] Privity of contract is the connection or relationship existing between two parties, each having a legally recognized interest in the same subject matter. Black's Law Dictionary (9th ed. 2009).

decision to infuse capital into corporations that she controlled does not place her in privity with those entities' contractual undertakings. Accordingly, Landan is not a proper plaintiff on the remaining claim.[5]

For the reasons set forth above, defendants' motion will be granted in part and denied in part. The motion will be granted as to plaintiffs' claim for fraud (Count IV) and all claims against the individual defendants (Counts I-IV). Plaintiffs' claims for promissory estoppel (Count II) will be dismissed without prejudice to renew in the event the record demonstrates that its reinstatement is the only way to avoid injustice. The allegations advanced at Count III are deemed to be incorporated into Count I. Count III will be dismissed as an independent cause of action. Landan's claims in her individual capacity will be dismissed as to Count I, II and IV and dismissed as to Count II without prejudice to its reinstatement in the event that further

---

[5]  Under Pennsylvania law, the need to establish privity "is not ironclad and parties who lack privity can bring a cause of action if they can show themselves to be intended third party beneficiaries of the contract." <u>Caciolo v. Masco Contractor Serv's East, Inc.</u>, 2004 WL 2677170, *2 (E.D. Pa. Nov. 22, 2004). The Pennsylvania Supreme Court has adopted the Restatement (Second) of Contracts, § 302, and summarized the relevant standard:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

<u>Scarpitti v. Weborg</u>, 609 A.2d 147, 150-51 (Pa. 1992).
 Here, the parties did not express an intent to benefit Landan in any writing. Furthermore, there are no allegations that the parties mutually agreed to give Landan the benefit of Wal-Mart's performance. Consequently, the current record does not reveal any grounds to support a claim that Landan was an intended third party beneficiary.

proceedings become warranted on Count II. The motion is denied in all other aspects.

Date: August 5, 2013

                s/ David Stewart Cercone
                David Stewart Cercone
                United States District Judge

cc: Marvin Leibowitz, Esquire
   Ronald W. Crouch, Esquire
   Kevin Batik, Esquire

   (*Via CM/ECF Electronic Mail*)